IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. H-04-446-4 |
| | § | CIVIL ACTION NO. H-10-1040 |
| JOSE ROBERTO LAVERDE-GUTIERREZ | § | |
| | § | |
| | § | |
| Defendant-Movant. | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28

U.S.C. § 2255 is Movant Jose Roberto Laverde-Gutierrez's § 2255 Motion to Vacate, Set Aside

or Correct Sentence (Document No. 295),[1] and the United States' Answer and Motion to Dismiss

(Document Nos. 322 and 323). In addition, the United States seeks to expand the record to

include the affidavit of Assistant Federal Public Defender, Michael Lance Herman, and affidavit

and revised affidavit of Wendell A. Odom Jr. (Document Nos. 311, 321). Movant has replied

to the Government's Motion to Dismiss, including the affidavits of counsel. (Document No.

324). After reviewing the parties' submissions, the record of the proceedings before the District

Court in the underlying criminal case, and the applicable case law, the Magistrate Judge

---

[1] Jose Roberto Laverde-Gutierrez's Motion to Vacate, Set Aside or Correct Sentence can be found at Document No. 1 in Civil Action H-10-1040 and at Document No. 295 in Criminal Action H-10-1040. References hereafter will be to the Criminal Document numbers unless otherwise indicated.

RECOMMENDS, for the reasons set forth below, that the Government's Motion To Dismiss (Document No. 323) be GRANTED, that Movant's § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Document No. 295) be DENIED and that this § 2255 proceeding be DISMISSED. The Magistrate Judge ORDERS that the Motion to Amend Affidavit of Wendell A. Odom, Jr., (Document No. 321) and the Government's Motion to Expand Record (Document No. 323) are both GRANTED.

## I.      Procedural History

Movant Jose Roberto Laverde-Gutierrez ("Laverde-Gutierrez"), who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C.§ 2255. This is Laverde-Gutierrez's first attempt at § 2255 relief.

On November 22, 2004, Laverde-Gutierrez along with Carlos Alberto Becerra, Fernando Garcia-Lozano, and Jose Walter Lopez-Solano were charged by Superceding Indictment with drug trafficking activities. (Document No. 65). In particular, Laverde-Gutierrez was charged with conspiracy to distribute 5 kilograms or more of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A) (Count 1S), aiding and abetting the possession with intent to distribute 5 kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2 (Count 2S), and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. §§ 924(c)(1)(A)(I)(Count 4S). (Document No. 65).

On May 13, 2005, Laverde-Gutierrez, without a written Plea Agreement, pleaded guilty to the Superseding Indictment. (Document No. 121 & 122, Transcript of Rearraignment, Document No. 214). At Laverde-Gutierrez's May 13, 2005, Rearraignment, the Court engaged

in an extended colloquy with Laverde-Gutierrez to ensure that his plea was knowing and

voluntary.  Indeed, with respect to the maximum penalties, and the manner in which his sentence

would be calculated, the following exchange took place between Judge Harmon and Laverde-

Gutierrez.

> The Court: Mr.  Laverde, has anybody made any promises or a assurances to you
> of any kind that prompted you or led you to the decision to plead guilty in this
> case?
>
> The Defendant: No, your Honor.
>                     *                               *
>
> The Court: Okay.  I want to talk to you now about the maximum penalties you're
> facing as a result of your plea of guilty this morning.
>
> You're pleading guilty to Count 1 and 2; Count 1 being a conspiracy to distribute
> a Schedule II controlled substance, and Count 2 being possession with the intent to
> distribute a controlled substance.  And for each of those counts, the penalties
> would be the same, and that would be a mandatory minimum of 10 years up to life
> imprisonment and a fine of not more than $4 million.  And there would be, for
> Count 1 and 2, at least 5 years supervised release.  And along with that supervised
> release, there would be certain conditions of supervised release that you would be
> obliged to follow.  If you failed to follow those, that (you) could be put back into
> prison for some additional period of time without any credit for the time that
> you've already been to prison without any time— any credit for the time that
> you've been on supervised release.
>
> Now, for Count 4, the penalty is a mandatory 5 years to be served consecutive to
> any sentence imposed for Count 1 and 2, and a fine of not more than $250,000.
> And Count 4 is possession of a firearm in furtherance of a drug trafficking offense.
> And for Count 4 as well, there would be supervised release of at least 5 years and
> there would be the conditions of supervised release which, if you fail to follow,
> would have the same results as for the other failure to adhere to the conditions of
> supervised release.
>
> And for all three of those— for each of the three counts, there would be a $100
> special assessment.  So in your case, it would be a $300 special assessment for
> Counts 1, 2, and 4.
>
> Do you understand all of those taken together: the prison time, the fine, the

supervised release, the conditions of supervised release, and the special assessment, those are the maximum penalties you're facing as a result of your plea of guilty this morning?

The Defendant: Yes, I understand.

The Court: Well, now I want to also – in just a moment we're going to be talking about the sentencing guidelines, but I want to be sure you understand that Counts 1 and 2 that you're pleading guilty to carry with them mandatory minimum sentences of 10 years, and Count 4 has a mandatory sentence of 5 years that would be added on to those two mandatory minimum sentences of ten years. And "mandatory minimum sentence" means that no matter what your guideline range might work out to be, you would still – I would still be obliged to give you a sentence of 10 years. Do you understand that?

The Defendant: Yes, ma'am.

The Court: And that for Count 4, we don't even look at the guidelines, really. It's just we have to tack on that 5 years to the end. Do you understand that?

The Defendant: Yes, your Honor.

The Court: All right. Under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow to determine what the sentence will be in a criminal case. Have you and Mr. Odom talked about how those guidelines may apply in your case?

The Defendant: Yes, your Honor.

The Court: Did Mr. Odom discuss with you the fact that now, the Sentencing Guidelines are not mandatory as they once were but are merely advisory?

The Defendant: Yes, your Honor.

The Court: But did he also tell you that we're still obliged to follow the guidelines in term of the process, the process of preparing a presentence report?

The Defendant: Yes, your Honor.

The Court: And also we are obliged to consider the guidelines although we are not mandated to follow them. Do you understand that?

The Defendant: I do, yes, your Honor.

The Court: All right.  So, when you and Mr. Odom talked with how the guidelines might apply in your case, did he tell you and do you understand that today I do not know what your sentence will be?

The Defendant: Yes, your Honor.

The Court: And I won't know until after the probation officer has done an investigation of your case and has written a presentence report that will assist me in sentencing.  Do you understand that?

The Defendant: Yes, your Honor.

The Court: You and Mr. Odom will get a copy of that report, and the Government will also get a copy of that report.  Each of you will be given an opportunity to make any objections you have to that presentence report.  Do you understand that?

The Defendant: Yes, your Honor.

                    *                              *

The Court: And if that should happen, if I should give you a sentence [that] [is] more severe than the one you're expecting to get, do you understand you will not be given an opportunity to withdraw your plea of guilty at that time?

The Defendant: Yes, your Honor.

The Court: All right.  Do you understand that after your guideline range has been determined, under some circumstances the Court would have the authority to depart from the guidelines and to impose a sentence that is either more severe or less severe than the sentence called for by the guidelines?

The Defendant: Yes, your Honor.

                         *                              *

The Court: All right.  All right.  Mr. Isaacs, tell me what it is the Government is prepared to prove if we went to trial in this case.

Mr. Isaacs: Yes, Your Honor.  I anticipate that the Government would show that beginning sometime in August of 2004, we began an investigation into drug activities of one Carlos Beccera and one Fernando Garcia-Lozano.  This information is based upon information from a confidential source, who would be

5

prepared to testify if we went to trial but whose name we will not read into the record at this time.

We would anticipate that the evidence would show that there was an agreement that the confidential source would obtain a place for purposes of trans— of stashing this cocaine, which would have been on 1600 Eldridge Parkway here in Houston, in which the CI, under the supervision of the DEA, did, in fact, acquire for these conspirators; that the DEA was advised — and I should say DEA and FBI were advised — that the transaction would occur sometime on September 2, 2004.

Based upon that, the agents began a surveillance of two locations, one, the location was the 1600 Eldridge Parkway address and also the business, which was owned by Carlos Beccera, which is in Alief-Clodine here in Houston, Texas.

On that date, they observed a white Ford van and a white Ford pickup truck. The white Ford pickup truck, we anticipate, will be – the evidence would show was used to transport that cocaine at some point in time during the course of this transaction. They departed the business of Mr. Beccera's, and then drove to certain locations in Houston. One of the locations they drove to was a Lowe's Home Center, which is located on Telephone and Woodchase.

And during this transportation of vehicles, this is when the defendant, Mr. Laverde, was observed along with Mr. Beccera. We also would show some evidence would show that some plywood was purchase[d] at that Lowe's Home Center which was subsequently used to conceal the cocaine in the bed of that white pickup truck.

They also noticed that Mr. Beccera and Mr. Laverde had met up with a third individual, an unknown individual, where the vehicle, the white Ford pickup truck, was driven to a location which was at a gas station. There, Mr. Beccera and Mr. Laverde abandoned the white Ford pickup truck. An unidentified individual drove that vehicle away.

We anticipate the evidence would show that this would be typical of how cocaine is transferred between traffickers and trafficking events. We were subsequently assuming that the drugs would be obtained on that particular day. The agents lost the pickup truck in traffic. They were subsequently contacted by the CI, who said that the cocaine would be delayed that day and it would not be delivered on the 2nd but that it should happen the next day, which would be September 3rd.

Based upon that, the agents discontinued surveillance at about 7:00 o'clock that night on the 2nd and picked it up the next day on the 3rd. And, of course, they went

back and began surveillance at the Eldridge Parkway address.  They also observed Mr.  Beccera departing his businesses.

They then were – they were observing the address at 1600 Eldridge Parkway when the white Ford or the white pickup truck was driven into the – at the location of 1600.  The CI subsequently advised them at that point in time that the cocaine had arrived.  Mr.  Laverde was in the apartment at that time.  We anticipate it would show that Mr.  Laverde helped transport that cocaine to the location on that date.

And at that time, the agents, as they were getting ready to make an arrest, they saw two other conspirators arrive at the location just before.  That was Walter Lozano – Lopez-Solano and Fernando Solar.  These individuals, I would anticipate, who have already pled guilty in this case the Court is aware, were there as well to supervise the unloading of this cocaine.

Subsequently, the agents arrested all of the defendants.  They arrested Mr. Laverde in the apartment.  The confidential source will testify that Mr.  Laverde was there not only to transport, but he was there to guard or to stay at that location to guard the cocaine while it was going to be there.

Mr.  Beccera also gave a post-arrest statement in which he also would testify and stated that Mr.  Laverde was involved in the transportation of the cocaine as well as, he stated, the unloading of the cocaine and that Mr.  Laverde-Guitierrez was to be paid for his services.

The total amount of cocaine which was seized at that location at the time was 365 kilos, was the gross.  Net, 308.9 kilograms of cocaine with 86 percent purity.

Also found in the apartment were several weapons.  One of those weapons was a weapon which was traced back to the defendant.  This weapon was a Glock Model 23 .40 caliber, which was found in the apartment – in the apartment living room of the apartment.  It was fully loaded.  The agents traced it back to Mr.  Jose Laverde, and he had purchased it, I believe, earlier in Florida and had brought it in interstate commerce into – and because of the fact that he was there to guard the cocaine, we believe that the evidence would support the fact that it was there in furtherance of the conspiracy.

That would be the sum and substance the evidence against him.  I'm sorry, your Honor.  I should also state while they were in the apartment, there were several conversations which were recorded on a tape recorder, which the CI had, and captured the voices of all defendants, including Mr.  Laverde in the course of this.

The Court: All right.  Mr.  Laverde, tell me in your own words what it is you did

to commit the crime you're pleading guilty to this morning.

The Defendant: By September, I was working for Mr. Beccera at the shop, and later he asked me to purchase plywood – to purchase plywood.

The Court: Purchase plywood?

The Defendant: Uh-huh.  And then next day, we went to pick up a truck with the load in it.

The Court: With a load?

The Defendant: Yeah, it was loaded.

The Court: Loaded with?

The Defendant: With the cocaine.

The Court: Uh-hum.

The Defendant: And the plywood.  And then I was drove it to the service place and removed the plywood.  I was helping unloading, removing the wheel barrow that was on top of the plywood, and the bundles were under it.

The Court: Okay.  Pretty much what Mr. --

The Defendant: The day before, I expect to spend the night over there.  I move all my belongs, my clothing, and among the things were my gun.

The Court: I'm sorry?

The Defendant: Among all the things, my belongs, were my gun.

The Court: Were your gun.  Okay.  All right.  (Transcript of Rearraignment, Document No.214, pp. 5-11, 16-21).

Prior to sentencing, a Pre-sentence Investigation Report ("PSR") was prepared

(Document Nos. 135, 146), to which Laverde-Gutierrez filed written objections. (Document No.

8

142).[2]   Pursuant to the PSR, Laverde-Gutierrez's sentence was calculated as follows:  (1) In

calculating Laverde-Gutierrez's base offense level, because Laverde-Gutierrez was held

accountable for 308 kilograms of cocaine he had a base offense level of 38. (2) Because Laverde-

Gutierrez accepted responsibility for his conduct, and did so in a timely manner, pursuant to

U.S.S.G. § 3E1.1(a) & (b), his offense level was reduced by three levels. (3) With an adjusted

base offense level of 35, and with a criminal history category of I, Laverde-Gutierrez had a

guideline sentencing range of 168 to 210 months.  In addition, Laverde-Gutierrez had a

mandatory consecutive sentence of at least 5 years for Count 4.  Laverde-Gutierrez was sentenced

on September 16, 2005. (Document No.150, Transcript of Sentencing Hearing, Document

No.205).  With respect to Laverde-Gutierrez's objections to the PSR, his objections were

overruled as follows:

> The Court: All right.  Mr. Odom has filed some objections and we're going to

---

[2] The docket sheet shows that Laverde-Gutierrez filed written objections to the PSR.
Laverde-Gutierrez objected to not being given an adjustment for a mitigating role in the
September 3, 2004, drug transaction that resulted in his arrest as described in PSR ¶ 54.
According to Laverde-Gutierrez, he acted as a handyman for Becerra and had no knowledge of
the drug enterprise that Mr. Becerra controlled.  In support of this argument, Laverde-Gutierrez
noted that he was described as the least culpable defendant at his Rearraignment by the United
States Attorney.  Next, Laverde-Gutierrez objected to PSR ¶¶ 30, 54, 58 and 75, all of which
described him as a Santeria priest or as being skilled in witchcraft and whose job in the drug
enterprise was to protect the shipment of cocaine.  According to Laverde-Gutierrez, he was raised
as a Roman Catholic and at the time of his arrest was a practicing Sikh.  In addition, Laverde-
Gutierrez argued that he was a herbalist and naturalist.  He further argued that there was no
evidence that he received $10,000.00 for "Santeria" protection services or that he delivered any
loads of drugs on Becerra's behalf.  Laverde-Gutierrez's final objection was to PSR ¶ 86, which
referred to a statement that had been made by the Confidential Informant relating to handguns
that had been given to Laverde-Gutierrez by Becerra for protecting the drugs.  Laverde-Gutierrez
argued that the handgun in question had been purchased by him on November 4, 2002, in
Orlando, Florida and that he purchased the handgun for his own protection and not to guard the
narcotics.  (Document No. 142).

deal–I'm going to go over those with him in just a moment, but I want to find out if you have any objections to the presentence report that you would like to make that Mr. Odom did not make on your behalf?

The Defendant: Oh, okay. No. No, ma'am.

The Court: No. All right. Okay. Mr. Odom--

Mr. Odom: Yes, Your Honor.

The Court:  — your main objection – well, not main. I shouldn't say that. But No. 1 objection has to do with mitigating role.

Mr. Odom: Yes, Your Honor.

The Court: Do you want to tell me about that very briefly?

Mr. Odom: Yes, Your Honor. It is — I believe that a good bit of the information that the – that is in the presentence report that relates to the role of this particular defendant comes from his codefendant, and I think that it exaggerates the role that he had in the offense. I believe that he was on the periphery of this offense. I do not think that he knew of other offenses that occurred. I do not – although he certainly was aware of a conspiracy, I do not think that he knew the amount of drugs that were coming in.

If he was to benefit financially from it, I do not think that he knew how much money he was going to get from it. He may have known that he was —might get some money for helping his friend in this particular case. But I truly believe that as it goes to the core elements of the conspiracy that this person was not involved in either the importation or the direct benefit of the funds in the cocaine itself. I think that he falls in a much smaller, more less culpable role of a participant who was helping others in this particular conspiracy.

The Court: All right. I don't — the presentence report does not give him any kind of role. It's just an average role.

Mr. Odom: That's correct.

The Court: And I think that the facts of the presentence report would bear that out. He may not have been as culpable as others, but he wasn't — he did not have a minimal role or a minor role in this crime. So, I'm going to overrule your first objection.

Now, the second objection has to do with his being called or characterized, identified as a Santeria person, a member of that faith, and he objects to that, which I can understand.  And I believe that your objection has clarified that he does not consider himself to be Santeria, rather he considers himself to be a member of the Sikh religion.  But I went back and reread the presentence and each time that Santeria is mentioned, it is coming from the mouth of another person.  In other words, these people identified him as that.  So, I'm not going to ask the probation officer to change that, because those people identify him as that.  They may be incorrect, but they did identify him as that.

And so now it's on the record that there is a dispute about what his true religion is and it doesn't have anything to do with his scoring or anything, so I'm just going to overrule your objection to No.  2.

Now, No.  3, we get to this gun issue that Mr.  Laverde brought up just a few minutes ago.  I don't understand why that's brought, because he did plead guilty to that count.

Mr. Odom: Right, Judge.  And I think that there is a little confusion about this.  What we are saying is not that he didn't possess a gun, that he didn't have a gun in his baggage, that he was going to spend the night in that house that night.  I think there was some additional information in the presentence report implying that somehow or another he was going to supply guns, handguns to other people involved in this conspiracy and I think — that would assist the conspiracy.  And actually I think that's one of the reasons where you get into this, well, he has an average role in this case.  He's not a minor participant or a minimal participant.  To the degree that the presentence report mentions that, we object to that.

We don't say that he didn't possess the gun that he had.  He had purchased that gun previously for totally unrelated purposes.  That gun was in his baggage.  He was going to spend the night in the house.  That's why we pled guilty to the gun count.

We do object if there's any implication or inference that somehow or another we were involved in the other guns that may have been used in furtherance of this conspiracy.

The Court: All right.  But it talks about this is what Beccera, the codefendant---

Mr.  Odom: Yes.

The Court: — said and was doing and does not indicate that Mr.  Laverde had any involvement in any other guns.

11

Mr.  Odom:   If that's ---

The Court: I mean, I'm looking at 86.

Mr.  Odom: If that's the case, then fine, Judge.

The Court: Yeah.  Okay.

Mr.  Odom: We had gotten the impression that somehow or another we were — either had knowledge of what Mr.  Beccera was doing with these guns or we had somehow or another been involved in this or some sort of knowledge should filter down to us, and that is what our objection is, in essence.

The Court: Okay.  All right.  Well, I don't think that objection is well-taken, because I don't think that's what it says.  So, I'm going to overrule your objection. (Transcript of Sentencing Hearing, Document No.  205, pp.  4-8).

The record further shows that prior to the imposition of his sentence by Judge Harmon, Laverde-

Gutierrez's counsel made additional sentencing arguments relating to his client's peripheral role in

the offense when compared to his other co-defendants:

Mr.  Odom: Yes, Your Honor.  I'll attempt to be brief.  This has been a long morning.  I have two points, and the first one is the disparity that I see about to take place in this case.

Whether we get the two points for minimum participant or not, I don't think there's any question that compared to the other participants in this conspiracy, Mr.  Jose Laverde is by far on the periphery compared to them for the reasons that I mentioned before.  He was not in the core of this conspiracy.  He was not a drug runner as such.  He was not benefitting directly like other members of this conspiracy would.

Because he had purchased a gun previously for totally other purposes, you heard it before, because he was going to spend the night at the house that night and he had his gun with his baggage, he very well faces a much harsher punishment than the other co-conspirators in this case.  The reason being is, because he's not eligible for the safety valve.  He's got a gun.  Not only that, he is not a drug runner.  He has a totally different background and participation in society, and therefore he's not going to qualify for a 5K1.1.

So, here you've got a guy that is less involved in the conspiracy, that has a gun

12

with him, and for the sole reason that he has a gun with him, because he's going to spend the night at the house, is going to possibly, very likely, be sentenced much greater than the people that are the drug runners in this case, that are involved in the – when I say drug runners, in the core of the conspiracy, as opposed to on the periphery of the conspiracy. That is extremely bothersome to me, and that's my first issue.

My second issue is, is that it's happening to what I have perceived as a good person. He's a spiritual person. I don't pretend to know a great deal about all that he represents in that regards, but I have just been flooded, as was the probation officer, from the Sikh community in Houston, with letters and support for this person and it all says the same thing. That he is a person that has helped them, that he has — is a good person, that he is a spiritual person that believes in meditation and healing, and the anecdotes and the instances of wherein he has done this and has done that and the good that he has done is quite surprising to me.

So, my two points are that you've got this disparity in this conspiracy that's going to hammer him, and he's a very good man. And I know that the Court is limited in what it can do. I wish it could do more. But within what it can do, I know we're looking at the minimum sentence here. I would ask the Court to seriously consider that because of the two reasons that I mentioned. (Document No. 205, pp. 8-10)

The Government did not object to this characterization by counsel of Laverde-Gutierrez. The

Government responded:

Mr. Isaacs: Your Honor, I'm just going to address this last portion of it. And I agree with Mr. Odom. The evidence is clear this man was the least culpable of all and that is also corroborated by my conversations with other members of this conspiracy. Whether that's a reason for the Court to give him any kind of a mitigating role, I'm not here to say. But my point is, it clearly was that he is the least culpable of them all.

One of the individuals — most of these individuals were just going to transport this cocaine to other parts of the country or to Canada for distribution to make considerable amounts of cash out of this. There's no evidence that Mr. Laverde was a part of all that.

His assistance here was, of course, helpful and quite wild, because someone had to watch over this cocaine, which was a large amount which was at the house. That was his role. And as I stated, I agree with Mr. Odom here, that he was the least culpable. And with that said, I mean, whatever sentence guideline the Court decides to levy, I would ask the Court to go to the low end of that guideline.

13

(Document No. 205, pp. 10-11)

In addition, Laverde-Gutierrez wrote a statement that was read by counsel and he stated that he purchased the gun because his car had been vandalized. Laverde-Gutierrez wrote:

> So that you may have a better perspective of the true character I possess. Some 20 years ago I moved to the city of Houston, Texas, for work and to establish a new place I call home. In the initial stages of my migration, I was facing many difficult times, especially where a culture and linguistic and social adaptability are concerned. There are many human beings in this city who witnessed and who can testify to my progress, success, and failures as I strived to become a productive member of society.
>
> When I first came here to Texas, I was not able to understand the simplest word or phrase of English. Now, your Honor, I write and speak English little more than adequately.
>
> My entire time here in the United States, I've never before committed a criminal act, felony, misdemeanor, not even a DWI. Whether it be fulfilling the obligations of my immigration status or truly filing the necessary paperwork to legally possess a firearm for my protection, I've never attempted to usurp the criminal laws, rules, and regulations of the United States.
>
> I've grown to love this country and it hurts me so deeply to be portrayed as some kind of thug or drug trafficker. I hope I'm neither. Nevertheless, due to my connection with the events related to my arrest, I take responsibility for my negligence. I was wrong for not asking the right questions and allowing myself to be used as a pawn for evil people.
>
> Your Honor, I'm asking this Court for mercy based upon my character and my clean and useful 20 years I have spent in Houston. I offer my work and life as testimony of my strong beliefs in God and my practical homage and respect for his eternal laws and undeniable presence in my life. I just ask for a sight of compassion and understanding that my involvement in such negative events were beyond my control.
>
> I request from Your Honor to make sure that the fact of being Colombian, contrary to popular belief, if not synonymous with being a drug dealer or drug trafficker. My whole life is a testimony of that, testimony which is now in God's hand through your verdict. In other words, the future of my life dwells on your wise decision. May God give you compassion and eyes to see and make justice on me. Sincerely and humbly yours, Jose Roberts Laverde-Gutierrez. (Transcript of

14

Sentencing Hearing, Document No. 205, pp. 12-13).

Laverde-Gutierrez was sentenced to a term of imprisonment of 168 months on Counts 1 and 2 of

the Superceding Indictment, to be served concurrently, to be followed by a consecutive term of

60 months on Count 4 of the Superseding Indictment, for a total term of 228 months, to be

followed by concurrent terms of supervised release of 5 years on all counts. Also, the Court

imposed a special assessment of $300. (Document No.150, Transcript of Sentencing Hearing,

Document No.205, pp. 15-17). With the respect to Laverde-Gutierrez's sentence, Judge

Harmon stated:

> All right. Mr. Jose Roberto Laverde-Gutierrez is before the Court on his first
> criminal felony conviction. As indicated in the offense conduct portion of the
> report, he was trusted by Beccera to protect and watch over the cocaine and
> Beccera confided in him on matters related to his drug business and used him to
> transport cocaine in the Houston area. The total amount of drugs attributed to him
> is the 308 kilograms that Laverde-Gutierrez assisted in unloading and concealing
> on September 3, 2004, at the stash apartment.
>
> I believe that a sentence at the low end of the guideline range is appropriate in this
> case. And I wish to also point out that the additional 60 months is a statutory
> requirement... . (Transcript of Sentencing Hearing, Document No. 205, p. 19).

Judgment was entered on October 5, 2005. (Document No. 154). Laverde-Gutierrez appealed to

the Fifth Circuit Court of Appeals. The Fifth Circuit affirmed Laverde-Gutierrez's sentence on

November 26, 2008. (Document Nos. 281, 282). The Fifth Circuit wrote:

> A. Rule 11 Error
>
> Under Federal Rule of Criminal Procedure 11, Laverde argues that his admitted
> conduct did not constitute a sufficient factual basis for finding that he knowingly
> possessed a firearm in furtherance of a drug trafficking offense, as defined by 18
> U.S.C. § 924(c)(1)(A). Pursuant to Rule 11(b)(3), "[b]efore entering judgment on
> a guilty plea, the court must determine that there is a factual basis for the plea."
> Laverde asserts that because he never admitted to the conduct required for a
> conviction under this statute, the district court erred in accepting his guilty plea.

*See United States v. Marek*, 238 F.3d 310, 315 (5ᵗʰ Cir. 2001) (en banc) (holding that Rule 11 requires that the factual basis for the guilty plea on which the district court makes such a determination consists of the defendant's admitted conduct). Significantly, Laverde does not argue that he would not have pled guilty to the firearm offense without the district court's alleged error.

The Government contends that the district court committed no error, plain or other wise, in accepting Laverde's guilty plea. The Government argues that under Rule 11(b)(3) a district court may satisfy the factual basis requirement with any information that appears in the record including the Government's proffer. *See United States v. Musa*, 946 F.2d 1297, 1302 (7ᵗʰ Cir. 1991) (holding that "[a] judge may find the factual basis from anything that appears on the record, [] which includes the government's proffer."). Thus, according to the Government, because its proffer included evidence that could reasonably be construed as a factual basis for accepting Laverde's guilty plea, the district court did not err in accepting the plea. The Government asserts that the court may look to the entire record to determine whether there were sufficient facts to establish the offense to which Laverde pled guilty.

Where, as here, a defendant does not object to the Rule 11 proceedings before the district court, this court's review is for plain error. *United States v. Castro-Trevino*, 464 F.3d 536, 541 (5ᵗʰ Cir. 2006). Under plain error review, Laverde must show that (1) there is an error; (2) the error in clear and obvious; and (3) the error affects his substantial rights. *Id.* Laverde must show a reasonable probability that, but for the alleged Rule 11 error, he would not have entered the guilty plea. *Id.* at 544; *United States v. Molina*, 469 F.3d 408, 412 (5ᵗʰ Cir. 2006); *see also United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004).

Having reviewed the full record, we are satisfied that his case in controlled by the Supreme Court's instruction in *Dominguez Benitez* and this court's precedent. We are aware of the distinction – *Castro-Trevino* and *Molina* both featured concessions of error by the Government, and there is no such concession here. *See Castro-Trevino*, 464 F.3d at 541; *Molina*, 469 F.3d at 412. However, even assuming *arguendo* that the district court plainly erred by failing to elicit Laverde's express, personal admission of facts sufficient to establish the crime of possessing a firearm in furtherance of a felony, he has not established prejudice. Laverde did not try to withdraw his guilty plea at any time below and does not do so on appeal. Although he requests that his "guilty plea should be set aside [and] the case remanded to the district court for further proceedings," he does not request the opportunity to go to trial or direct this court to any portion of the record demonstrating that his plea decision was affected by the alleged error— that he did not personally admit to facts sufficient to establish the offense. *See Molina*, 469 F.3d at 412. Laverde fails to demonstrate a reasonable probability that he would

not have pled guilty to the firearm offense if the trial court had solicited his admission of additional facts sufficient to support his plea.  Therefore, we affirm his conviction on the firearm offense.


B *Offense Level Adjustment for Minor Participation*

Laverde argues that the district court erred by denying him a two-level minor role adjustment under U.S.S.G. § 3B1.2.  He contends that he was substantially less culpable than the other participants because he was not directly involved in importing the 308 kilograms of cocaine into the United States.  The district court's determination is a factual finding reviewed for clear error.  *United States v. Miranda*, 248 F.3d 434, 446 (5th Cir.  2001).

Pursuant to U.S.S.G. § 3B1.2(b), a district court may reduce a defendant's offense level by two levels if the defendant was a minor participant in the offense.  This adjustment applies to a defendant "who is less culpable than most other participants, but whose role could not be described a minimal."  § 3B1.2, comment 9n.4).

Citing *United States v.  Rojas-Millan*, 234 F.3d 464, 473 (9th Cir.  2000), Laverde argues that his level participation should be judged against the other participants in the offense rather than the "hypothetical average participant."  He notes that the Government informed the district court, both at the rearraignment and at sentencing, that he was the least culpable of the participants.  We have previously held that "[a] minor participant adjustment is not appropriate simply because a defendant does less than other participants."  *Miranda*, 248 F.3d at 446, *also Burton v.  United States*, 237 F.3d 490, 504 (5th Cir.  2000) (noting that this court does not adhere to the Ninth Circuit's requirement of a comparison between the defendant's role and that of the other participants).  The focus of this court's inquiry with respect to whether a defendant qualifies for a minor role adjustment is whether the defendant's conduct was peripheral to the advancement of the illicit activity.  *Miranda*, 248 F.3d at 446-47.  The evidence supports the district court's conclusion that Laverde was not a minor participant.  Laverde helped in both the transportation and unloading of the cocaine, and he assisted in guarding the cocaine.  His conduct was thus not peripheral to the advancement of the conspiracy, and we find that the district court did not clearly err in finding that Laverde was not eligible for an offense level adjustment under U.S.S.G. § 3B1.2(b).


C.  *Consideration of Mitigating Evidence*

17

In his final point of error, Laverde contends that his sentence was unreasonable because the district court did not demonstrate on the record that it had considered his arguments in mitigation of his sentence.  Relying on Sixth Circuit precedent, Laverde argues that although he failed to raise this argument before the district court, the argument is considered preserved for appellate review because the district court did not clearly ask whether he had any objections to the sentence.  *See United States v.  Thomas*, 498 F.3d 336, 340 (6th Cir.  2007).  We have not adopted such a rule.  The district court's reasons were sufficient in this case.  *See United States v.  Rodriguez*, 523 F.3d 519, 525 (5th Cir.  2008) (declining to decide whether plain error or abuse of discretion was appropriate standard of review where defendant argued for the first time on appeal that the district court inadequately explained its reasoning for the challenged sentence).

Under the now discretionary guidelines scheme, a sentencing court has a duty to consider the factors of 18 U.S.C. § 3553(a) and to correctly determine the applicable Guidelines range.  *United States v.  Gall*, 128 S.Ct.  586, 596 (2007); *Rodriguez*, 523 F.3d at 525.  Further, where the record makes clear that the district court listened to and considered a defendant's arguments and evidence regarding the § 3553(a) factors, but found the circumstances insufficient to warrant a lower sentence, the district court's reasons for rejecting the defendant's § 3553(a) arguments are generally legally sufficient, even if they are brief.  *See Rodriguez*, 523 F.3d at 525 (discussing the Supreme Court's analysis of the district court's sentencing at issue in *Rita v.  United States*, 127 S.Ct.  2456, 2468-69 (2007)).  Finally, "a sentence within a properly calculated Guideline range is presumptively reasonable."  *United States v.  Alonzo*, 435 F.3d 551, 554 (5th Cir. 2006); *see also Rita*, 127 S.Ct.  at 2462.

Laverde argues that the district court pronounced his sentence without responding to the following mitigating factors: (1) a Guidelines sentence would result in a disparity among similarly situated defendants; (2) he had never been involved in any criminal activity in the past; and (3) he was a good and spiritual person.  A review of the record reveals that this is not the case.  The district court noted that Laverde was before the court on his first criminal conviction.  The court also addressed the level of Laverde's culpability, noting that Laverde was a trusted member of the conspiracy and that his role was to "protect and watch" over the cocaine.  The district judge explained that she believed a sentence at the low end of the Guidelines range was appropriate in this case, and that the sixty-month sentence on the firearm count was a statutory requirement.  Laverde has failed to demonstrate that the district court's sentencing determination was unreasonable.  (Document No.  281, pp.  3-7)

Thereafter, Laverde-Gutierrez sought review by the United Supreme Court.  On June 1, 2009, his

petition for a writ of certiorari was denied.  (Document No.  284).

On March 29, 2010, within one year of his conviction being final, Laverde-Gutierrez timely filed a § 2255 Motion to Vacate, Set Aside, or Correct Sentence.   (Document No.295).

## II.  Claims

In his § 2255 motion, Laverde-Gutierrez raises claims of ineffective assistance of counsel. According to Laverde-Gutierrez, his counsel rendered ineffective assistance when he promised him that he would receive no more than ten years imprisonment if he pleaded guilty.  He further claims that counsel was ineffective when his attorney failed to pursue discovery requests concerning evidence relating to his vehicle while it was in a repair shop.  According to Laverde-Gutierrez, this evidence was suppressed by the Government and was tantamount to a *Brady* violation because the evidence was favorable to him.  In addition to his ineffective assistance of counsel claims, Laverde-Gutierrez claims that the Court erred when it accepted his guilty plea in violation of Rule 11.  Finally, Laverde-Gutierrez contends that *Bailey v.  United States* rendered the factual basis of his guilty plea insufficient to support his conviction.  According to Laverde-Gutierrez, because there was no active employment of the firearm and there was no evidence that the firearm was used in furtherance of the drug trafficking offense, he should not have pleaded guilty to the firearm charge.

The Government, in its Response and Motion to Dismiss (Document Nos.  322 & 323) argues that Laverde-Gutierrez's § 2255 Motion to Vacate, Set Aside or Correct Sentence should be dismissed because Laverde-Gutierrez is not entitled to relief.  According to the Government, Laverde-Gutierrez has not shown that his counsel was deficient nor has he shown that he was

prejudiced.  With respect to the other claims, the Government argues that because both claims were raised by Laverde-Gutierrez in his direct appeal, he may not re-argue them in a § 2255 Motion.

With respect to Laverde-Gutierrez's allegations of ineffective assistance of counsel, the Government has submitted the affidavits of Laverde-Gutierrez's counsel, Wendell A.  Odom, Jr. and Michael Lance Herman, which have been included the record (Document No.  322-1, 322-2, 322-3**)**.  Mr.  Herman states in pertinent part as follows:

> 2.  I was assigned the task of representing the defendant, Jose Roberto Laverde-Gutierrez in <u>United States v.  Becerra et al.</u>, 4:04-CR-446-4.  I represented Mr. Laverde-Gutierrez from September 10, 2004, until February 9, 2005, when the Court granted Mr.  Laverde-Gutierrez's motion for his retained counsel, Wendell Odom, to substitute as attorney-in-charge.  (Docket No.  100).

> 3.  I have read the document styled "Petition for Relief Pursuant, 28 U.S.C.S. 2255, Laverde's Opening Brief in Support of the Habeas Corpus," Docket Entry No. 295.  I have determined that Mr. Laverde-Gutierrez is asserting two claims: that he received a promise of a maximum sentence of 10 years for all counts to which he pled guilty (pages 1, 7) and that I did not provide him with access to discovery in his case (pages 15, 19).

> 4.  I did not make any promise of a <u>maximum</u> sentence of 10 years to Mr. Laverde-Gutierrez.  On the contrary, Mr. Laverde-Gutierrez was admonished before the Magistrate Judge concerning a statutory mandatory <u>minimum</u> sentence for the drug conspiracy charge alone.

> 5.  On November 9, 2004, I wrote a letter to Mr. Laverde-Gutierrez in Spanish in which I explained to him the evidence against him, my opinion on the likelihood of prevailing on a motion to suppress, and my continuing efforts to file motions on his behalf in preparation for trial.  I further explained to him various Sentencing Guideline calculations, most of which were substantially in excess of 10 years, and the uncertainty of such calculations absent the completion of the investigation by Probation officers.  Although I analyzed reasons supporting the entry of a plea of guilty to the then-filed charges, I did not promise him a sentence of less than 10 years of imprisonment.

> 6.  On November 19, 2004, I sent Mr. Laverde-Gutierrez copies of my notes and

20

the notes taken by an investigator in the Office of the Federal Public Defender of our review of the discovery materials made available to us by the United States.  I explained to Mr. Laverde-Gutierrez that the United States refused to provide copies of the reports that we summarized in our notes.  On December 8, 2004, I sent copies of photographs received as discovery from the United States to Mr. Laverde-Gutierrez.  On December 22, 2004, I received transcripts of recordings from the United States, and I sent copies of those transcripts to Mr. Laverde-Gutierrez on January 11, 2005.  I also turned over all of this discovery to Mr. Laverde-Gutierrez's substitute counsel.

7.  The Office of the Federal Public Defender was relieved of duty to represent Mr. Laverde-Gutierrez on February 9, 2005.  (Docket Entry No. 100).  Mr. Laverde-Gutierrez did not enter a plea in this case until May 13, 2005.  (Docket Entry No. 122).  I did not advise Mr. Laverde-Gutierrez with regard to the plea or otherwise undertake to represent him from the date on which the District Court relieved the Federal Public Defender of duty with respect to Mr. Laverde-Gutierrez. (Document No. 322-3).

In addition to the Affidavit of Mr. Herman, the Government has submitted an Affidavit of

Laverde-Gutierrez's retained counsel, Mr. Wendell A. Odom, Jr. (Document No. 322-1 and

Amended Affidavit, Document No. 322-2).  In his Affidavit, Mr. Odom states in part:

2.  I was retained to represent Jose Roberto Laverde-Gutierrez in U.S. v. Becerra et al., and substituted in as his attorney on February 9, 2005.  I continued to represent and counsel him until his sentencing on September 16, 2005.

3.  I have read the Petition for Relief Pursuant to 28 USCS 2255 and Laverde's Opening Brief in Support of the Habeas Corpus.  I have determined that Mr. Laverde-Gutierrez is asserting three claims: That he received a promise of a ten (10) year sentence, that he was unaware of the facts of his case and the plea he entered was done so without full knowledge of the facts and legal consequences and was therefore involuntary.

4.  When I substituted in on the case Mr. Michael Herman of the Federal Public Defenders office had already completed the bulk of discovery from the Government.  While I may have received additional statements from witnesses the vast majority of the evidence against the client was contained in the witness statements and transcripts that were provided to Mr. Laverde-Gutierrez.  Like Mr. Herman, I went over each and every witness and their statements with Mr. Laverde-Gutierrez.  Each time we visited, I had a Spanish translator with me and several times an associate attorney in my office.  I had several of the witnesses for

Mr. Laverde-Gutierrez in my office and they were character witnesses. There were no facts that are important to the case against Mr. Laverde-Gutierrez, that I am aware of, that were not discussed in great detail on more than one occasion.

5.  There was a search involved in the case against Mr. Laverde-Gutierrez and I carefully explained the law of search and seizure and advised him that it would be frivolous to file a motion to suppress evidence obtained as a result of the search. I also explained the consequences of fighting and/or trying his case and how such actions may have adverse consequences in his guideline calculations. I also explained all these issues with the friends of Mr. Laverde-Gutierrez that were part of his outside support system.

6.  I never made a promise of a maximum sentence of ten years to Mr. Laverde-Gutierrez. Mr. Laverde-Gutierrez was looking at a statutory mandatory minimum sentence of ten (10) years for the drug conspiracy. I carefully went over the guideline range and possible exposure with Mr. Laverde-Gutierrez each and every time I visited him. I distinctly remember that he did not like his options and me explaining that those were the options available. He had a choice of either a trial or a plea and the respective sentencing guidelines and possible sentences available. I would have never promised a maximum sentence in federal court unless it was statutory. (Document No. 322-1)

Due to an error in paragraph 7 of this Affidavit, Mr. Odom submitted a corrected paragraph 7:

In paragraph 7 of my original affidavit I stated that "Mr. Laverde-Gutierrez signed a plea agreement after it was read and reviewed in Spanish while he was in the Federal Detention Center. The agreement was again reviewed and signed before the District Court Judge, Melinda Harmon" ... this statement is incorrect. While a plea agreement was read and reviewed in Spanish while Mr. Laverde-Gutierrez was in the Federal Detention Center it was never signed at the Detention Center and never entered into before the Court. We made a conscious decision not to enter into the plea agreement and waive certain rights such as appeal.

Although we did not sign a plea agreement I carefully explained to Mr. Laverde-Gutierrez the process that would take place during a plea and at sentencing. I told Mr. Laverde-Gutierrez about the statutory minimums that he was facing and that the Judge would be the final decision maker of what sentence he would receive. I explained many times that any opinion I made as to what sentence he would receive was an estimate based upon my experience and would not bind the court. We discussed on many occasions what the Judge was like and that she would make the final determination as to the sentence he received. (Document No. 322-2).

Laverde-Gutierrez was provided a copy of counsel's affidavits, which were attached to the

Government's Motion to Dismiss.   The docket sheet shows that Laverde-Gutierrez responded to the Government's motion and to the contents of the affidavits.  (Document No.  324).

### III.  Discusison

#### A.  Guilty Plea Claims

Laverde-Gutierrez argues that the Court erred when it accepted his guilty plea in violation of Rule 11 and that there was not a sufficient factual basis to support his plea to Count 4.  The Government counters that Laverde-Gutierrez's claims are procedurally barred because they were not raised on direct appeal, and to the extent that Laverde-Gutierrez attempts to overcome the procedural bar based on his allegations of ineffective assistance of counsel, Laverde-Gutierrez has not shown that counsel's performance fell below the *Strickland* standard and therefore, he cannot show prejudice and is not entitled to relief.

Pursuant to 28 U.S.C. § 2255, a federal prisoner may challenge his conviction on the basis that his " sentence was imposed in violation of the Constitution or laws of the United States, or that the Court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." Motions brought pursuant to § 2255 are reserved for claims of constitutional or jurisdictional significance.  *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1081); *Limon-Gonzalez v. United States*, 499 F.2d 936, 937 (5th Cir. 1974).

When claims of constitutional or jurisdictional import are not raised on direct appeal, the claims are procedurally defaulted, and can only be considered in a § 2255 proceeding if a

movant can show cause for his failure to raise his claims on appeal, and actual prejudice resulting from the alleged errors. *United States v. Placente,* 81 F.3d 555, 558 (5th Cir. 1996) (" [A] defendant who raises a constitutional or jurisdictional issue for the first time on collateral review must show both cause for his procedural default and actual prejudice due to any such errors."); *United States v. Gaudet,* 81 F.3d 585, 589 (5th Cir. 1996) (" When raising issues of jurisdictional or constitutional magnitude for the first time on collateral review, a defendant ordinarily must show both cause for his procedural default and actual prejudice resulting from the error."); *United States v. Acklen,* 47 F.3d 739, 741-42 (5th Cir. 1995) (" Because a challenge under section 2255 'may not do service for an appeal,' a movant may not raise constitutional or jurisdictional issues for the first time on collateral review without establishing both 'cause' for his procedural default and 'actual prejudice' resulting from the error."); *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) (" A defendant can challenge his conviction after it is presumed final only on issues of constitutional or jurisdictional magnitude … and may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error."), *cert. denied*, 502 U.S. 1076 (1992).  Procedurally defaulted claims also may be considered for the first time in a § 2255 proceeding if the movant can show that he is actually innocent.  *Bousley v. United States*, 523 U.S. 614, 622 (1998) (" Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may by raised in habeas only if the defendant can first demonstrate either 'cause' and actual prejudice … or that he is 'actually innocent.' ").

Here, even assuming that Laverde-Gutierrez could establish cause for his failure to raise

the claim that there was an insufficient factual basis to support his guilty plea to Count 4 on direct appeal, namely that counsel could have and should have raised the issue on direct appeal, he cannot show prejudice which has resulted from the  alleged error.  Accordingly, Laverde-Gutierrez' s claim is procedurally barred from review in this § 2255 proceeding.

Moreover, even if this claim was not procedurally barred and Laverde-Gutierrez had, on direct appeal, argued that there was not a sufficient factual basis to support his conviction on Count 4.  As discussed above, this issue was implicitly raised by counsel on direct appeal given the Rule 11 challenge to whether there was a sufficient factual basis for finding that he knowingly possessed a firearm in furtherance of a drug trafficking offense, which necessarily included Count 4.  Because the Fifth Circuit found there was a sufficient factual basis to support the guilty plea on Count 4 no relief is available on the merits of the claim.

### B.  Ineffective Assistance of Counsel Claims

Claims of ineffective assistance of counsel are generally measured by the standard of *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had.  *Strickland*, 466 U.S. at 687.  Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable.  *Id*. at 687-88.  The prejudice element requires a petitioner to prove that absent the disputed conduct of counsel, the outcome would have been both different and more favorable.  *Id*. at 694-95.  Under *Strickland*, a petitioner must establish both deficiency and prejudice prongs to be entitled to habeas relief.  The failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong.  *United States v.*

25

*Seyfert,* 67 F.3d 544, 547 (5th Cir. 1995).

Under the deficiency prong of *Strickland*, judicial scrutiny of counsel's performance is "highly deferential" and "a strong presumption" is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1064-65 (5th Cir. 1992), *cert. denied,* 509 U.S. 921 (1993) (citing *Strickland*). To overcome the presumption of competence, the petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland,* a petitioner must be able to establish that absent his counsel's deficient performance, the result of his trial could have been different. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The determination of whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record. Each case is judged in light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied,* 467 U.S. 1220 (1984). The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland,* 466 U.S. at 690. "We will not find inadequate representation merely because, with the benefit of hindsight, we disagree with counsel's strategic choices." *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999) (quoting *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997)). Conclusory allegations

26

of ineffective assistance of counsel do not raise a constitutional question in a federal habeas

petition. *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000), *cert. denied*, 531 U.S. 849 (2000)

(citing *Barnard v. Collins,* 958 F.2d 634, 642 (5th Cir. 1992); *Ross v. Estelle*, 694 F.2d 1008,

1012 (5th Cir. 1983)).

With respect to guilty pleas, the prejudice requirement "focuses on whether counsel's

constitutionally ineffective performance affected the outcome of the plea process." *Hill v.

Lockhart*, 474 U.S. 52, 59 (1985). Thus, Laverde-Gutierrez "must show that there is a reasonable

probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted

on going to trial." *Id.*

As to the specific examples of ineffective assistance of counsel which Laverde-Gutierrez

cites to in support of his ineffectiveness claims, such as that counsel promised him a particular

sentence, namely a ten year sentence, that he was unaware of the facts on his case, and that his plea

was not knowing and voluntary because he did not understand the facts and legal consequences,

and that he was not provided with access to the discovery in his case, the record either

affirmatively shows that neither of Laverde-Gutierrez's counsel were deficient or there is no

evidence that the alleged errors prejudiced Laverde-Gutierrez within the meaning of *Strickland*.

With respect to Laverde-Gutierrez's claim that both of his attorneys promised him a ten

year sentence, other than Laverde-Gutierrez's conclusory allegations, he has pointed to nothing in

the record to support his claims. Indeed, the transcript of his Rearraignment makes clear that

Laverde-Gutierrez was advised by Judge Harmon that she was not in a position at that time to

advise Laverde-Gutierrez of his guideline sentence and would not be until after preparation of the

PSR, but that in any event that there would be a mandatory sentence of 5 years for Count 4 that

27

would be added to his mandatory minimum sentence of ten years to life for the drug conspiracy charges. Laverde-Gutierrez stated that he understood that any estimate of his sentence would be a prediction, not a promise. The law is clear that a miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel. Moreover, Laverde-Gutierrez has not come forward with affidavits from reliable third parties establishing the terms of the alleged promise of ten year sentence, the time and place of the promise, or the identity of any eyewitnesses to the promise. *See United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998). Laverde-Gutierrez's own self-serving conclusional allegations are not sufficient. *Id.; see also United States v. Demik*, 489 F.3d 644, 646-47 (5th Cir.), *cert. denied*, 128 S.Ct. 456 (2007).

Likewise, to the extent that Laverde-Gutierrez contends that he was not provided with any discovery in his case, Mr. Herman states, under oath, that all discovery materials were provided to Laverde-Gutierrez. Laverde-Gutierrez does not dispute that he was provided the information. Moreover, Mr. Odom states that he discussed the applicable Fourth Amendment law relating to search and seizure and advised Laverde-Gutierrez that it would be frivolous to file a motion to suppress. This was a strategic and tactical decision that does not serve as a basis for an ineffectiveness claim. To the extent that Laverde-Gutierrez argues he was prejudiced because evidence that he had purchased the weapon before his arrest and conviction and had placed a 911 call when his vehicle was stolen were not made part of the record, counsel made such arguments in connection with his sentencing.

As to Laverde-Gutierrez's argument that his conduct did not constitute a sufficient factual basis for finding that he knowingly possessed a firearm in furtherance of a drug trafficking offense

as described in Count four and that the Court erred in accepting his plea, the record shows that he raised this claim on direct appeal.  As discussed supra, the Fifth Circuit found that there was a sufficient factual basis to support his guilty plea.  Issues raised and disposed of on direct appeal may not be re-litigated in a 2255 motion.  The law is clear that "issues raised and disposed of in a previous appeal from a judgment of conviction are not considered."  *United States v.  Kalish*, 780 F.2d 506, 508 (5th Cir.  1986); *United States v.  Rocha*, 109 F.3d 225, 229 (5th Cir.  1997). *United States v.  Jones*, 614 F.2d 80, 82 (5th Cir.  1980).  Given that counsel raised the arguments on direct appeal, Laverde-Gutierrez has not shown that counsel's performance fell below that of *Strickland*.  Because Laverde-Gutierrez's allegations are contrary to his own testimony at the Rearraignment, which is presumptively truthful, he has offered no proof as to how his counsel's performance was objectively deficient, or proof that such deficient performance prejudiced him in any way.  *See Strickland*, 466 U.S. at 687.  Therefore, no relief is available under § 2255 on the ineffective assistance of counsel claims.

## IV.  Conclusion and Recommendation

Based on the foregoing, it is

RECOMMENDED that the Government's Motion to Dismiss (Document No.  323) be GRANTED, and that Movant Jose Roberto Laverde-Gutierrez's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No.  295) be DENIED.  It is FURTHER

ORDERED that Motion to Amend Affidavit of Wendall A.  Odom, Jr., (Document No.  321) is GRANTED.  It is FURTHER

ORDERED that the Government's Motion to Expand the Record (Document No.  323) is GRANTED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas.  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved party from attacking conclusions of law on appeal.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 7th  day of  December, 2010.


Frances H. Stacy
United States Magistrate Judge


30